| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:23-CR-110 |
| v. | ) | |
| | ) | JUDGE GREER |
| CLINTON CROSS PEREGOY CARR | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and Clinton Cross Peregoy Carr, hereinafter referred to as the "defendant," and the defendant's attorney, Cody T. Knight, have agreed upon the following:

1. The defendant will plead guilty to the following counts in the indictment:

   a) Count One. Conspiracy to Distribute 400 grams or More of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).

   The punishment for this offense is as follows.

   1) Imprisonment for not less than 10 years, up to life,
   2) A fine of not more than $10,000,000,
   3) A term of supervised release of not less than five years, up to life, and
   4) A $100, mandatory, special assessment fee.

   b) Count Two. Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A).

   The punishment for this offense is:

1) Imprisonment for not less than 5 years, up to life, which must be served consecutive to any other count of conviction,

2) A fine of not more than $250,000,

3) A term of supervised release of not more than 5 years, and

4) A $100, mandatory, special assessment fee.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

   a) In the summer of 2022, investigators with the Johnson City Police Department (JCPD) began an investigation into drug trafficking allegations related to a suspected drug trafficking organization (DTO) operated in the Eastern District of Tennessee by Spencer Bradley, also known as "Spenny" or "Spencer Montana" (2:23-CR-120).

   b) On February 16, 2023, a JCPD officer conducted a traffic stop of a vehicle for speeding. The car had been seen leaving a known drug house. The officer identified the defendant as a passenger of the vehicle. The defendant was

2

found to be in possession of approximately 28 grams of cocaine and 16 fentanyl pills. In addition, he was found to be in possession of a loaded, Zev 9mm handgun. The defendant was provided with *Miranda* warnings and admitted to possessing the cocaine. He admitted that he got cocaine earlier that day. He stated that he buys ½-1 ounce of cocaine every 2-3 days. He had, at that point, been doing so for the last 3 months. He also admitted to having 2 or 3 more firearms back at his residence. Other passengers in the vehicle stated that the defendant had sold them fentanyl, had firearms, and was a drug supplier.

c) On April 5, 2023, a Trooper with the Tennessee Highway Patrol observed a vehicle operating westbound on Interstate 26 in the Eastern District of Tennessee with an improper registration plate. The Trooper conducted a traffic stop of the vehicle and identified the defendant as the driver. In plain view was drug paraphernalia. The Trooper searched the car and found 27 fentanyl pills in the defendant's front pants pocket. A search of the vehicle revealed approximately 600, counterfeit oxycodone pills, which contained a mixture or substance containing a detectible amount of fentanyl. Counterfeit oxycodone pills typically weigh between .09 and .13 grams each. In addition to the counterfeit oxycodone pills, law enforcement recovered a Kimber, .357 Magnum revolver.

d) In a post-*Miranda* statement, the defendant admitted to possession of the 600, counterfeit pills containing fentanyl. He also admitted that he purchased the firearm for protection. The defendant stated that he pays $4 per pill and has

3

purchased at least 600 fentanyl pills every day or so for the last 2 months. The defendant was unable to identify his source of supply of fentanyl. He admitted that, just prior to the traffic stop, he had purchased 10 grams of cocaine. He stated that he purchased between ½ and 1 ounce of cocaine every day or two. He went on to state that he purchased the firearm he was carrying from a Federal Firearms Licensee in Johnson City, TN.

e) On May 23, 2023, during the course of a narcotics trafficking investigation, the 2nd Judicial District Drug Task Force executed a search warrant in Kingsport TN. During the search of the residence law enforcement identified the defendant as one of several people inside the residence. During a search of his person, the defendant possessed 16 grams of cocaine in his pants' pocket, and $1,360 in cash. Inside the bedroom was a safe. The defendant provided law enforcement with the combination to open the safe. They recovered a Palmetto Arms, AR15-style rifle, a Kimber .45 caliber pistol, 6 counterfeit pills containing fentanyl, and $6,163 in cash. The defendant was advised of his rights under *Miranda* and admitted that he purchased the controlled substances of fentanyl and cocaine. He admitted that he has, over the past months, made several purchases of controlled substances. He stated that he only sold to "small time" people. During this interview he stated that he gets 500-1000 counterfeit oxycodone pills with fentanyl from Chattanooga and is charged $4 per pill. He also admitted to making his own crack cocaine. He stated that he sold, at his cost, counterfeit oxycodone pills laced with fentanyl to another person, and had been doing so for approximately 6 months. He

admitted that he was aware that a female had overdosed on one of the counterfeit pills that he had distributed. The female was revived with Narcan.

    f) On August 24, 2023, an investigator with JCPD observed a vehicle traveling at a rate of speed in excess of the posted speed limit. He paced the vehicle at 50 mph in a 30-mph speed zone. The investigator conducted a traffic stop of the vehicle and identified the defendant as the driver. When asked for his driver's license, the defendant stated that he did not have one. A database check confirmed that his license was suspended. When asked for consent, the defendant refused. A police canine conducted a free-air sniff and alerted to the presence of contraband inside the vehicle. During the search, police located 13 grams of a substance identified as cocaine. The defendant was found to be in possession of $6,520 in cash. In a post-*Miranda* statement, the defendant admitted that he had recently purchased the cocaine.

5.     The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

   a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

   b) The Court will impose special assessment fees as required by law; and

   c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level

pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitute, or are derived from, any proceeds obtained, directly or indirectly, as the result of an offense in violation of 21 U.S.C. §§ 841 and/or 846, and any properties used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense which are in the possession or control of the defendant or the defendant's nominees. The defendant also agrees to forfeit any firearms and ammunition involved in the commission of an offense in violation of 18 U.S.C. § 924(c). The defendant agrees to forfeit his interest in the following:

<u>FIREARMS AND AMMUNITION</u>

    a) Loaded, Zev 9mm handgun;

    b) Kimber, .357 Magnum revolver;

    c) Palmetto Arms, AR15-style rifle; and

    d) Kimber .45 Caliber pistol.

7

Case 2:23-cr-00110-JRG-CRW   Document 30   Filed 06/05/24   Page 7 of 12   PageID #: 87

MONEY JUDGMENT

A personal money judgment in the amount of $6,345.00 against the defendant and in favor of the United States, which represents the proceeds the defendant personally obtained as a result of an offense in violation of 21 U.S.C. §§ 841 and/or 846.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any property seized or in custody of law enforcement during the investigation. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the Defendant agrees to send all money judgment payments to the United States Marshals Service. Defendant also agrees that the full money judgment amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may

be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

10. Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a

§ 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though

there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

14. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON, III
UNITED STATES ATTORNEY

6/5/2024
Date

By: B. Todd Martin
Assistant United States Attorney

06-05-24
Date

x Clinton Cross Peregoy Carr.
Defendant

5 June 2024
Date

Cody T. Knight
Attorney for the Defendant

12